## 76544. KEYWAY CONTRACTORS, INC. v. LEEK CORPORATION, INC. et al.

(376 SE2d 212)

BENHAM, Judge.

Appellee The Leek Corporation was a subcontractor on a government building project. Leek subcontracted a portion of its work to appellant Keyway Contractors by means of a written subcontract executed in late 1981. A dispute arose concerning the method of payment from Leek to Keyway, and Keyway stopped working and left the job site in late 1982. Leek filed an action against Keyway seeking to recover the damage it allegedly suffered due to Keyway's departure. Keyway answered and counterclaimed for the value of its services and for damages it allegedly sustained due to Leek's alleged repudiation of the subcontract. Keyway added as a defendant in counterclaim appellee United States Fidelity & Guaranty Company (USF&G), the surety on Leek's payment bond to the general contractor, and sought payment of its claims therefrom. The trial court directed verdicts on liability in favor of appellees on Leek's main claim and Keyway's counterclaim, and the jury established Leek's damages as $65,640 plus interest. After the trial court entered a judgment in favor of Leek for $65,640 principal, $21,740.20 interest, costs, and post-judgment interest at 12 percent, and denied appellant's motion for new trial, this appeal was filed. Appellant contends the trial court erred in granting directed verdicts in favor of appellees, and in denying appellant's motion for directed verdict on Leek's main claim.

Appellant's contract with Leek contains the following pertinent provisions:

"Section 5 . . . Unless otherwise herein specified, payments to be made as follows: Monthly payments equal to 90 percent of the value of all work completed as of the established payment estimate period . . . less the aggregate of all previous payments, with final payment and retainage becoming due upon completion of all work, acceptance thereof and payment therefor by Owner."

"17 . . . (e) if [Keyway] fails or refuses to proceed with [its] work . . . , [Leek] may upon three (3) days' written notice to [Keyway], . . . prosecute the work to completion. . . . [A]ll monies expended therefor shall be deducted from the contract price herein

stated, and if such expenditures exceed the amount otherwise due to [Keyway] hereunder [Keyway] agrees to pay to [Leek] on demand the full amount of such excess, together with interest. . . ."

"28 . . . (b) If at any time any controversy should arise between [the parties] with respect to any matter or thing involved in this Subcontract . . . , then the decision of [Leek] shall be followed by [Keyway], and said controversy shall be decided as follows:

"(i) [Keyway] shall conclusively be bound by and abide by [Leek's] decision, unless [Keyway] shall commence arbitration proceedings as hereinafter provided.

"(ii) If [Keyway] decides to appeal from the decision of [Leek], then the controversy shall be decided by arbitration and the arbitration decision shall be final and binding on both parties to resolve the controversy; provided, however, that arbitration proceedings shall be commenced by [Keyway] not later than 30 days following receipt of notice of [Leek's] decision.

"(iii) No dispute or controversy shall interfere with the progress of construction, and [Keyway] shall proceed with its work without interruption, deficiency, or delay."

"40. If any provision of this Subcontract is construed so as to be void, all other provisions remain in full force and effect."

1. In its suit, Leek sought from Keyway the damages, as provided in Section 17 (e) of the contract, it had incurred as a result of Keyway's failure to complete the work it had contracted to do. Keyway maintains that the monthly amounts Leek paid to it were not figured pursuant to the formula contained in Section 5 of the contract, and that Leek's conduct constituted a material breach of the contract, prohibiting a directed verdict in favor of Leek on the main claim. Keyway asserts that the same alleged breach by Leek constituted a repudiation of the contract, which released Keyway from any further contractual obligations and entitled Keyway, not Leek and USF&G, to a directed verdict on Keyway's counterclaim.

We are in agreement with the trial court's succinct assessment of the situation when presented with the motions for directed verdict at the close of the evidence: "The ground [on which] Keyway [is basing its claim] that Leek breached the contract was simply a question of non-payment, which is another way of saying dispute over payment. Disputes over payment were contemplated in the contract. It was made a term of the contract. How they were to be resolved became a term of the contract. It was specifically addressed within the contract in order to guarantee that the contract be completed and continue to be in spite of disputes dealing with payment . . . The allegation of nonpayment is the breach that Keyway relies upon. I find that the provision dealing with disputes is in fact a material condition of the contract. I find that Keyway breached that condition. . . ."

As the trial court stated, the parties agreed in their contract to resolve disputes by means of arbitration. The parties also agreed to proceed with their work despite any disputes. Under the terms of the contract, Keyway should have placed the payment dispute in arbitration and continued working pending the resolution of the dispute. Keyway, instead, voiced its displeasure with Leek's method of payment by walking off the job, in direct and material violation of the contract. Keyway's claim that Leek breached the contract and that Leek's breach preceded that of Keyway cannot stand in the face of the method of dispute resolution contained in the contract. Since only Keyway could invoke arbitration and did not, the question whether Leek's method of payment was in violation of the contract remained unresolved. There was, however, no question but that Keyway had materially breached the contract by abandoning the unfinished project.

2. Keyway argues that the contract's arbitration clause is unenforceable for a number of reasons and therefore cannot defeat Keyway's right to pursue its defense of Leek's claim or its counterclaim. The contract's severability clause (paragraph 40, supra), coupled with its "continuing performance" clause (paragraph 28 (b) (iii)), renders moot the question of the enforceability of the arbitration clause. Even if the arbitration clause were construed to be void, the contract provides that "all other provisions remain in full force and effect." Thus, still in effect was the provision that "[no] dispute or controversy shall interfere with the progress of construction, and [Keyway] shall proceed with its work without interruption, deficiency, or delay." By abandoning the unfinished project, Keyway materially breached the contract, and Leek was entitled to recover the damages it incurred due to Keyway's breach. The trial court did not err in directing verdicts on liability in favor of appellees and in denying Keyway's motion therefor.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 9, 1988 —
REHEARING DENIED DECEMBER 5, 1988 —

*Webb & Daniel, Paul Webb, Jr.,* for appellant.
*J. Alexander Porter, James G. Killough,* for appellee.